JUSTICE HUNT
dissenting.
I dissent. A “set-off’ is an equitable defense which in this case was used to reach a potentially inequitable result.
Additional facts not provided by the majority opinion are necessary to fully understand this case.
MOPOG’s problems began when MPC drastically lowered the amount it paid for gas. While it previously had paid Northern $3.00 per mcffc. for gas, in 1986 it began to pay Northern at the rate of only $1.85 per mcft. Northern passed this drastic price cut on to its suppliers, reducing the amount it paid to MOPOG from $1.25 per mcft. to $0.40 per mcft. MOPOG contested this reduction in writing, but continued to provide Northern with gas. Two years later, MOPOG defaulted on various security agreements, and First Security stepped in.
Northern subsequently sued MPC for breach of contract, and agreed to a “standstill” arrangement with MOPOG pending the outcome of that litigation. Following summary judgment in its favor, Northern received a settlement from MPC in the amount of $1.7 mil *383 lion. Although testimony at trial indicated that the calculations used in reaching the settlement included certain amounts for damages to Northern’s suppliers, to date none of the settlement money has been disbursed to MOPOG’s successor in interest.
The Flathead County judgment obtained by Northern against MOPOG also needs to be explained in greater detail. MOPOG ceased to exist as a corporate entity in December 1989. In February 1991, FDIC, as MOPOG’s successor in interest, sued Northern in Toole County for breach of contract. Northern was duly served with notice of the lawsuit. Nine months later, and nearly two years after MOPOG was dissolved, Northern filed suit against MOPOG in Flathead County for breach of the same contracts which were the basis of FDIC’s Toole County suit against it.
Northern admittedly made no attempt to contact any of MOPOG’s former officers or directors to inform them of the Flathead County suit. Not surprisingly, MOPOG did not appear. Northern subsequently received a judgment in excess of $332,000 by default, without the merits ofits claims ever having been addressed. Northern then filed an answer in the Toole County case, asserting that, pursuant to § 27-1-502, MCA, its Flathead County judgment must be used to offset FDIC’s damages.
Section 27-1-502, MCA, was first enacted in 1867, and since that time has never been construed or interpreted by any case in Montana. The statute is not a model of clarity. To remind, § 27-1-502, MCA, reads:
Survival of counterclaim — death or assignment. When cross-demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other and neither can be deprived of the benefit thereof by the assignment or death of the other.
This statute provides the circumstances under which a set-off is created. If Party Ahas an existing demand for a given amount against Party B, and Party B also has an existing demand for a given amount against Party A, the amounts will be deemed to be “set-off’ to the extent that they are equal. This interpretation it bolstered by Black’s Law Dictionary, which provides that “[w]here a person against whom a demand is made by another, in his turn makes a demand against the other, these mutual demands are called ‘cross demands.’A‘set-off’ is a familiar example.” Black’s Law Dictionary 375-76 (6th ed. 1990). *384 The statute provides for three events in a particular order: the existence of the cross-demands, the existence of the set-off, and then the assignment, which will not affect the existing set-off. The statute does not contemplate a situation, as here, where the set-off follows an assignment of all rights but no liabilities, and the assignor has ceased to exist.
Northern cannot hold FDIC responsible for the actions of MOPOG because neither FDIC nor First Security assumed MOPOG’s liabilities. Therefore, had Northern brought its claims as a counter-suit in FDIC’s Toole County case, it could not have prevailed. Instead, it obtained a judgment by default in another court, then brought that judgment back to Toole County to minimize the amount of damages collectible by FDIC. This limits the amount FDIC may recover and, therefore, is a breach of contract liability created by MOPOG but imposed upon MOPOG’s successor in interest. While there is a real legal difference between a counterclaim and a “set-off,” in this case it is a matter of mere semantics and cannot justify a result which otherwise would not be permitted.
Even assuming arguendo that I agreed with the majority’s interpretation of § 27-1-502, MCA, this Court does not have sufficient facts before it to conclusively determine that the statute is applicable in this case. The statute clearly states that a set-off is allowed “[w]hen cross-demands have existed. ...” (Emphasis added.) Whether they must exist before the assignment or before the cause of action is not clear. Either way, in this case it cannot be determined with certainty when, if ever, cross-demands were made.
Both parties allege they were damaged by breach of contract, and both can pinpoint with some certainty when they allege the breach occurred. The record does not reflect, however, when each party contacted the other and made a specific demand to recover an amount allegedly owed. The statute requires an actual demand.
This requirement for an actual demand is reasonable, as is a statutory interpretation which places the “demand” before the assignment. A demand from Northern would have put MOPOG on notice of the dispute and of what Northern felt was owed to it. It further would have given MOPOG an opportunity to contest the validity of the demand. We cannot say with certainty that this occurred. If a demand were not made until after the assignment took place, it would be directed at an incorrect party (the innocent assignee instead of the one who caused the damage).
*385 The majority glosses over this point by noting that, if Northern was in fact damaged, its right to recover began at the time it was damaged; that is, when the contract was breached. Concededly, this was before the assignment and the filing of the Toole County suit. However, § 27-1-502, MCA, does not refer to a “right to recover,” it refers to demands. Without the existence of cross-demands, the statute is inapplicable. Since it cannot be determined from the existing record when, if ever, cross-demands were made, it is unclear how the majority can so confidently hold that § 27-1-502, MCA, applies.
By utilizing this rather obscure statute and obtaining a default judgment against a defunct party, Northern is attempting to minimize the damages it must pay to MOPOG’s successor in interest without regard to what amount may justly be owed. This cannot be considered an equitable result.
For these reasons, I would affirm the decision of the District Court.